UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEZMAN ROSHEA JONES,

                Petitioner,                        Case No. 1:19-cv-314

v.                                          Honorable Robert J. Jonker

RANDEE REWERTS,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      Factual allegations

Petitioner Dezman Roshea Jones is incarcerated with the Michigan Department of Corrections at Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  Following a five-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316, carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and two counts of possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  On August 26, 2016, the court sentenced Petitioner to respective prison terms of life imprisonment, 47 to 90 months, and two consecutive terms of two years.

On April 18, 2019, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner signed his application on April 18, 2019.  (Pet., ECF No. 1, PageID.3.)  The petition was received by the Court on April 24, 2019.  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises one ground for relief, as follows:

I.      THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO
        EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL
        ATTORNEY ANNOUNCED TO THE JURY THAT HE WOULD CALL
        ALIBI WITNESSES WHO WOULD TESTIFY BUT WHOM HE DID
        NOT CALL AS WITNESSES.  U.S. CONST. AM VI.

        A.      THE MICHIGAN APPELLATE COURT'S DECISION WAS
                CONTRARY TO AND INVOLVED AN UNREASONABLE
                APPLICATION OF STRICKLAND, AND THEIR DECISION TO

AFFIRM PETITIONER'S CONVICTION WAS BASED ON AN UNREASONABLE DETERMINATION IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDINGS WHERE PETITIONER'S TRIAL ATTORNEY ANNOUNCED TO THE JURY THAT HE WOULD CALL ALIBI WITNESSES WHO WOULD TESTIFY BUT WHOM HE DID NOT CALL AS WITNESSES.

(Pet'r's Br. in Supp. of Pet., ECF No. 2, PageID.7.)

The following facts are taken from the opinion of the Michigan Court of Appeals:

The prosecution presented evidence showing that defendant shot and killed the victim. Two witnesses, defendant's cousin and a friend, were with defendant and defendant's father in a vehicle around the time the shooting occurred, and they testified that defendant shot the victim, who was standing near a sidewalk when the vehicle carrying the four men pulled up. The only difference between the two accounts was that defendant's cousin testified that he believed that defendant exited the car and started shooting, whereas defendant's friend testified that defendant shot the victim from inside the car after rolling down the rear, passenger-side window. Another witness at the scene testified that she observed a hand reach out from the rear, passenger-side window and that gunshots then rang out. According to defendant's friend, after the shooting started, he heard defendant state, "I got him." The car carrying defendant sped off, and other witnesses at the scene identified the vehicle, which eventually led to arrests. Evidence was presented that defendant disposed of the firearm after the shooting, which gun was never recovered. The jury also heard testimony from an inmate who had been incarcerated with defendant, and he testified that defendant told him that he "wished he never killed that little n****r." Additionally, there was evidence that shortly before the shooting, the victim and defendant's father had engaged in a verbal altercation at a local nightclub.

(1/23/18 Mich. Ct. App. Op. at 1, Case No. 334955, http://publicdocs.courts.mi.gov/opinions/final/

coa/20180123_c334955_72_334955.opn.pdf (last visited June 6, 2019).[1]

Petitioner appealed his convictions to the Michigan Court of Appeals, raising the

claim presented in his habeas application, together with a claim that the verdict was against the

---

[1] Petitioner does not dispute any fact recited by the court of appeals. He does, however, include a more extensive recitation of the facts in his brief in support of his habeas petition, which includes facts useful to cross-examination of the witnesses: the witnesses gave different initial statements to the police; Petitioner's cousin received a beneficial plea agreement in exchange for his testimony, which reduced his charged offense from first-degree murder to that of being an accessory after the fact; and Petitioner's friend was not charged as a result of the shooting, though he owned the car and was present at the time of the shooting. (Pet'r's Br. in Supp. of Pet., ECF No. 2, PageID.11-14.)

great weight of the evidence. In an opinion issued on January 23, 2018, the court of appeals rejected both appellate grounds and affirmed the convictions. (*Id.*)

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same issues. The supreme court denied leave to appeal on May 29, 2018.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last

adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.     Ineffective Assistance of Counsel

Petitioner contends that his trial attorney was ineffective for promising the jury that he would produce alibi witnesses and failing to do so.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*,

563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances,

the question before the habeas court is "whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir.

2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

> The Michigan Court of Appeals addressed Petitioner's claim as follows:
>
> Next, defendant contends that trial counsel was ineffective. During his opening statement, counsel for defendant informed the jury as follows:
>
>> And I spent a great deal of time, because, in fact, [defendant] was on the other side of town selling dope. I spent a great deal of time trying to find people he had bought dope from and I found a couple. I don't know if I'm going to be able to prove it. They're a bit reluctant to walk into . . . this court and testify that they bought dope—marijuana. But even without that alibi, the other information that you're going to receive from the other witnesses just isn't making a lot of sense.
>
> Counsel never presented an alibi witness at trial. Therefore, defendant argues that counsel was ineffective for making the above-referenced remarks in his opening statement.
>
> Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:
>
>> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, *supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second,

the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

We are not prepared to find that trial counsel's performance was deficient. He did not definitively promise the jury that he would in fact produce an alibi witness. Indeed, despite the failure to produce an alibi witness, the statement could still be characterized as being beneficial to defendant, indicating personal knowledge by counsel of actual alibi witnesses that could exculpate defendant while providing a very believable reason why those witnesses might not come forward and testify, perhaps planting a seed of reasonable doubt. Further, given the seriousness of the charges against defendant, the reference to defendant selling marijuana was hardly problematic or damaging, especially in today's culture. Finally, assuming deficient performance, defendant has not established the requisite prejudice, considering the overwhelming evidence of defendant's guilt. Had trial counsel not made the statement, we are confident that the jury would still have convicted defendant; the statement and production failure did not bring about defendant's convictions.

(1/23/18 Mich. Ct. App. Op. at 2-3 (footnote omitted), Case No. 334955, http://publicdocs.courts.

mi.gov/opinions/final/coa/20180123_c334955_72_334955.opn.pdf (last visited June 6, 2019).

The Michigan Court of Appeals explicitly applied the correct constitutional standard. Petitioner argues, however, that the court of appeals' decision amounted to an unreasonable application of the *Strickland* standard to the facts of the case. He asserts that counsel's statement must be read as a promise to present alibi witnesses and that the failure to produce those witnesses amounted to constitutionally deficient performance and that, absent that deficient performance, there existed a reasonable probability that the result of the proceeding would have been different.

As the court of appeals recognized, however, counsel made no promise to the jury. Instead, counsel offered a possibility that he had personal knowledge of an alibi that he admittedly might be unable to prove for reasons that would be understandable to the jury. The qualified nature of counsel's representation undermines any claim that counsel *promised* the jury that he would introduce alibi testimony; counsel explicitly advised that he might not be able to produce the witnesses because of their reluctance to testify. Rather than demonstrating ineffective assistance, counsel's statement reflects a strategic decision to suggest the existence of an alibi without the necessity of proving anything. Moreover, while telling the jury Petitioner was engaged in dealing marijuana posed some small risk of casting Petitioner in a negative light, the relatively minor nature of that offense, when compared to the charged offenses, represented a reasonable strategic choice.

Moreover, even if defense counsel had promised jurors that he would produce alibi witnesses, no clearly established Supreme Court precedent holds that an unfulfilled attorney promise to produce a witness, standing alone, constitutes ineffective assistance of counsel. The Supreme Court repeatedly has cautioned that a general standard like ineffective assistance of counsel or prosecutorial misconduct does not clearly establish every application of the standard. *See, e.g., Woods*, 135 S. Ct. at 1377 (cautioning the Sixth Circuit against framing the issue of counsel's conflict of interest at "too high a level of generality"); *Lopez*, 574 U.S. at 4 (rejecting as clearly established a specific application of a general proposition of the Supreme Court); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) ("By framing our precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court[,] . . . thus collapsing the distinction between an unreasonable application of federal law" and what a lower

court believes to be an incorrect or erroneous application of federal law . . . .") (internal quotations omitted); *Marshall*, 569 U.S. at 64 ("Circuit precedent cannot "'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (citing *Parker*, 567 U.S. at 48 (recognizing that circuit courts cannot expand what is clearly established when applying highly generalized standards such as that for prosecutorial misconduct)).  In the absence of a decision of the Supreme Court on a closely similar claim of ineffective assistance of counsel, Petitioner cannot demonstrate that the state court's application of Supreme Court precedent was unreasonable.

Moreover, even applying Sixth Circuit precedent, Petitioner would not be entitled to relief.  Although the Sixth Circuit has sometimes found that an attorney was ineffective for promising to produce a witness and then failing to do so, it has not established a per se rule that such a failure automatically demonstrates ineffective assistance of counsel.  Instead, the courts have looked to the circumstances, including the overall strength of the case and the adequacy of counsel's pretrial investigation.

In *English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010), the court concluded that, under the deferential standard owed to the state court's decision, counsel's failure to produce a witness did not constitute ineffective assistance.  *Id.* at 727-28.  The court separately concluded, however, that counsel was ineffective in failing to adequately investigate the witness' credibility prior to promising to produce her.  *Id.* at 727-30.  The problem in *English*, therefore, was counsel's failure to investigate obvious problems with the witness before promising to produce that witness—not counsel's simple failure to produce a promised witness.  *See also Plummer v. Jackson*, 491 F. App'x 671, 676-77 (6th Cir. 2012) (summarizing the *English* court's holding that "'it was objectively unreasonable for [defendant's] trial attorney to decide before trial to call . . . a

[certain] witness, make that promise to the jury, and then later abandon that strategy, *all without having fully investigated [the witness] and her story prior to opening statements*.'") (quoting *English*, 602 F.3d at 728) (emphasis added).

In contrast, in *Harrison v. Motley*, 478 F.3d 750 (6th Cir. 2007), the court held that an attorney's allusion to a possible alibi defense that went unfulfilled was not deficient performance. In reaching that decision, the court held that the reasons counsel eventually decided not to produce alibi witnesses were demonstrably reasonable: at the close of the prosecutor's proof, defense counsel believed the evidence was weak and the prosecution's witnesses had been effectively impeached; the proposed defense witnesses had recanted, presented inconsistent evidence, and faced allegations of misconduct; and counsel worried that the allegations of misconduct posed too great a risk to the possibility the jury would recommend the death penalty. *Id.* at 758-59.

The instant case is more similar to *Harrison* than *English*. Here, as in *Harrison*, defense counsel did not make a promise, but instead suggested that an alibi existed, but that he would likely be unable prove it. In addition, Petitioner does not suggest that counsel failed to investigate the witnesses for the alibi defense, and counsel's own representation to the jury was that he had investigated but that he might not be able to produce the witnesses. Thus, as in *Harrison*, counsel here made a strategic choice to suggest that Petitioner might have an alibi and to offer an understandable reason why evidence of the alibi might not be possible to produce. As the courts routinely have recognized, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *English*, 602 F.3d at 726 (quoting *Strickland*, 466 U.S. at 690). The circumstances here therefore are a far cry from the situation discussed in *English*, where counsel never investigated.

11

Moreover, the Michigan Court of Appeals reasonably concluded that counsel's mention of possible alibi witnesses that were not produced was harmless in the context of the evidence against him. *See Thompson v. Rapelje*, 839 F.3d 481, 485 (6th Cir. 2016) (finding that counsel's the failure to place the defendant on the stand as promised was rendered harmless because the jury saw the video of the defendant's police interview, in which the defendant presented his version of the events).

Under these circumstances, Petitioner fails to overcome the strong presumption that counsel's performance was reasonable. Even more certainly, he fails to overcome the double deference owed to the state court's rejection of his ineffective-assistance claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New*

*York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:    June 21, 2019          /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE